349 So.2d 262 (1977)
Lewis Etienne ALEMAN
v.
LIONEL F. FAVRET CO., INC. and Employers Casualty Co.
No. 59020.
Supreme Court of Louisiana.
June 20, 1977.
Rehearing Denied September 2, 1977.
*263 W. Paul Andersson, Hammett, Leake, Hammett, Hulse & Nelson, New Orleans, for defendants-respondents.
Robert McComiskey, Jean E. Senac, Jr., and Frank A. Silvestri, New Orleans, for plaintiff-relator.
DIXON, Justice.
On August 24, 1964 Lewis E. Aleman filed suit against the two defendants claiming that he was totally and permanently disabled as a result of injuries suffered in a work related accident which occurred on July 25, 1963. Lengthy delays in the litigation ensued and on October 16, 1974 the trial court found for the plaintiff and awarded him four hundred weeks compensation at $35.00 a week, less certain credits. The defendants appealed this judgment to the Fourth Circuit Court of Appeal. While the appeal was pending the plaintiff died, but his wife and children continue to pursue this cause of action. The Court of Appeal reversed and gave judgment for the defendants, dismissing the plaintiff's suit at his cost. Aleman v. Lionel F. Favret Co., Inc. et al., 338 So.2d 785 (La.App. 4th Cir. 1976). Plaintiff's application for rehearing was refused and this court granted writs to review the judgment of the Court of Appeal. 341 So.2d 899 (La.1977). For the reasons set forth below the judgment of the Court of Appeal is vacated and the judgment of the district court is reinstated.
On July 25, 1963 the plaintiff was employed as a general superintendent with Lionel F. Favret Company. Plaintiff had been employed by the company for the previous thirteen years. The testimony reveals that as superintendent Aleman was charged with the supervision of between forty and one hundred twenty men at any given construction site. On the date of the incident in question (July 25, 1963), plaintiff was supervising a job for his employer at 4747 Earhart Boulevard in New Orleans. A fuse box on the site was malfunctioning and Mr. Aleman attempted to repair it. The plaintiff testified that he went out to the fuse box with his timekeeper, Ray Bowman, and while using a set of pliers to remove a fuse from the box a short circuit occurred and an electrical flash pitted the plaintiff's eyeglasses and caused him to spin backward and twist his back. The plaintiff contends that this accident is the cause of his total and permanent disability.
Mr. Aleman testified that he does not remember the time immediately after he was hit with the electrical flash and the next thing that he remembers is being in the timekeeper's shack, still dazed. Mr. Bowman filled out a claim report for the damage to Aleman's glasses, which report listed July 25, 1963 as the date of the occurrence. Plaintiff did not file an injury report in connection with this accident until September, 1964. The plaintiff testified that he experienced slight pain in his back immediately after the accident, which pain became progressively worse over the next few months. However, Mr. Aleman continued to work from the date of the accident until just after New Year's, 1964 (approximately five and one-half months after the accident). The plaintiff testified that at that time it became too painful for him to even get out of bed.
On February 4, 1964 Dr. R. H. Corales, Jr. performed a partial hemi-laminectomy on the plaintiff. Although the surgery appeared to be successful, the plaintiff again began experiencing pain in his lower back and right leg some months later and on June 9, 1964 a full laminectomy was performed on Aleman by the same doctor. Mr. Aleman never returned to work after the second operation.
The Court of Appeal dismissed the plaintiff's suit, finding that the evidence adduced "failed to establish that his disability resulted from a work related accident." 338 So.2d at 788. As the Court of Appeal correctly pointed out, in order to recover workmen's compensation benefits the testimony as a whole must show that an employment accident occurred and that the accident had a causal relation to the disability. E. g. White v. Freeport Chemical Co., 319 So.2d 563 (La.App. 4th Cir. 1975). However, on appeal, the Court of Appeal *264 must give great weight to the factual conclusions reached by the trial court; and "when there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error."Canter v. Koehring Co., 283 So.2d 716, 724 (La.1973). The reviewing court must give great weight to the conclusions of the trier of fact, and should not disturb reasonable evaluations of credibility and reasonable inferences of fact, even though other evaluations and inferences are as reasonable.
The trial court here, faced with conflicting testimony, found that the plaintiff had carried his burden of proof in establishing that an accident had occurred and that it had a causal relation to his injury. The Court of Appeal reversed, relying on what it perceived to be a number of inconsistencies and omissions in the evidence.
First, it should be noted that the trial of this matter took place some eleven years after the date of the accident and that the plaintiff was sixty-six years old at the time of trial. The plaintiff testified that Ray Bowman, the timekeeper at the job site, had been standing behind him when the accident occurred. At trial Bowman denied that he had witnessed the incident and further testified that after the accident Aleman came into the timekeeper's shack, did not appear dazed, did not stumble around, and did not complain of any injury. However, Mr. Bowman had been deposed in connection with this case previously and he made the following statement in his deposition:
"He stumbled around, you know, but I couldn'tI couldn't recall now, you know, if I saw him fall over or nothing then, you know, but I know that he did get a shock in his glasses, you know, from that electricity when he pulled that circuit breaker."
This statement, made closer to the time of the accident, is in direct conflict with the witness' trial testimony and is corroborative of the plaintiff's account of the accident.[1]
Ernest Voss began working at Favret in July, 1963, soon after the accident. The Court of Appeal noted that Voss testified that he noticed no back difficulties in the plaintiff between July and December, 1963, but that the plaintiff did have visible back problems beginning in December, 1963, after the plaintiff returned from his recently purchased fishing camp in Slidell. Plaintiff had testified that his back pains became progressively worse from July, 1963 through the beginning of January, 1964, after which the pain became too great for him to work. In addition, the Court of Appeal relied on the fact that although the accident occurred in July, 1963, the plaintiff did not file an injury report until September, 1964.
At trial plaintiff admitted that on the date of the accident he didn't really think that he had been injured. Initially the plaintiff thought he only had a minor backache, but over a period of time the pain in his back became progressively worse. In addition, the plaintiff testified that in part he blamed himself for the accident, because he felt that he should not even have attempted to repair the fuse box.
When asked at trial why he continued to work from July through December, since the pain was getting worse, the plaintiff replied:
"Well, I love construction and I like to knowthere wasn't anybody I could actually turn that job over to. And, the pain would hurt me just as well home as it would over there. Of course, now, I didn't go pulling nothing, try to take a door down or nothing like that. Just take it easy, you see."
Regarding Voss' testimony that the plaintiff did not exhibit outward signs of pain *265 until December, there is no evidence of an independent accident at the camp causing the injury. In addition, the evidence revealed that December, 1963 was an unseasonably cold month and the plaintiff testified that it was only when the weather became very cold that the pain became intense.
In reversing the trial court, the Court of Appeal also relied on the fact that the plaintiff signed a form from his group hospitalization carrier, John Hancock, on which he checked two boxes indicating that the injury was not job connected and did not result from a work related accident. (John Hancock was not the Favret compensation insurer and its coverage extended only to non-work related accidents. The money received from John Hancock was used to pay for plaintiff's first back operation in 1964). When asked if he had read the form before he signed it, plaintiff responded:
"Well, this is what occurred. When I come over there and I give it to the timekeeper he says to me, `Lou, you got to sign it.' And, I said, `Well, I'm not signing a thing.' And, he said, `Why, it didn't happen on the job?' I said, `Well, ask your two timekeepers. They will tell you about it.' So, he went and seen Harold (plaintiff's employer) and Harold says to me you either sign this or you won't get a nickel. Now, of course, the way things are going now, I don't know if he changedif Lionel Favret carried their own insurance or whether they carried it through Hancock or Metropolitan or what."
Dr. Corales, the operating physician, could not definitely determine what caused the plaintiff's back condition. However, Dr. Vogel, an expert witness for the plaintiff, testified that it was medically probable that the necessity for the plaintiff's two back operations was caused by the injury suffered as a result of the accident.
The testimony of Mrs. Aleman (with some minor exceptions, principally concerning the exact dates of various events) corroborates and is consistent with the testimony of the plaintiff. There is no indication in the record that in his thirteen years as an employee of Favret the plaintiff had ever previously filed for compensation. Further, in his forty years as a construction worker the testimony reveals that the plaintiff had only been injured once previously, necessitating a total of three lost days of work.
On the basis of the record made in the district court, there was sufficient evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnished a reasonable factual basis for the finding that the plaintiff was totally and permanently disabled as a result of the July 23, 1963 accident. The Court of Appeal was in error in substituting its judgment for that of the trial court on these factual issues.
For the foregoing reasons, the judgment of the Court of Appeal is set aside and the judgment of the district court is reinstated, at the cost of defendants.
NOTES
[1] In addition, on the claim form he filled out for plaintiff's glasses, Bowman listed himself in the space below the following heading: "IMPORTANT! NAMES AND ADDRESSES OF WITNESSES: Secure names and addresses of witnesses or persons in immediate vicinity who may have seen accident or heard any statement made by injured person."