DOUCET, Judge.
This is a suit for breach of contract in connection with the proposed sale of a lumber company in Campti, Louisiana, due to misrepresentations by the seller. The trial judge made a factual determination that there had been numerous fraudulent misrepresentations by the defendant Miley,[1] and, in accordance with this finding, granted plaintiff the relief prayed for. From that adverse judgment the defendants have perfected this appeal, assigning as error the factual conclusions made at the trial level. We affirm.
The record reveals that Walter L. Hensley, plaintiff-appellee, was residing in Houston, Texas during the summer of 1979 and went to Shreveport, Louisiana, in search of a small business to purchase for a livelihood. While in Shreveport, Mr. Hensley and his wife went to the business of Mr. Paul Brown known as Allied Business Brokers of the ArkLaTex. In early May of 1979, defendant Clyde Miley had entered into a listing agreement with Allied Business Brokers, placing the assets of his wholly-owned corporation, Campti Lumber Yard, Inc., on the market. In connection with the listing, Mr. Miley had furnished information in the format of a “Business Profile” which reflected the lumber yard’s 1978 net profit before taxes to be $46,951.00 and that gross sales of the business were approaching $400,000.00. Furthermore, the profile stated the corporation had no debts. Based upon this information and further negotiations, an agreement was reached to sell the business for $25,000.00 plus the value of the inventory. Plaintiff deposited $9,000.00 with defendant Miley, acting as agent for Miley Realty Co., which sum was to be held in escrow. In the event the buyer failed to comply with the agreement within the time specified, the seller was to have the right to declare the deposit forfeited. All of this was reduced to writing on a form furnished by the seller-defendant. Thereafter, a more formal buy and sell agreement was drawn up and signed by the parties, which provided in pertinent part as follows:
1. The seller was obliged to comply with the Bulk Sales Law;
2. The seller was to inventory all merchandise by September 29, 1979;
3. At the date of closing (October 1, 1979), the seller was to have good and marketable title to all of the property transferred, free of all liens and encumbrances;
*48 4. At the date of closing, the seller was to provide the buyer with certified copies of a resolution of its Board of Directors and written consent of all stockholders approving the contemplated sale;
5. The seller was to comply to buyer’s satisfaction with the Louisiana Bulk Sales Law;
6. Seller and buyer were to enter into a lease for a five year period for the rental of the premises occupied by the seller; and
7. The closing date, as stated above, was set for October 1, 1979.
Because of the sellers’ inability to timely comply with certain of the above conditions, an interim operating agreement was executed.
Meanwhile, the plaintiff had a certified public accountant examine the records and financial affairs of Campti Lumber Yard, Inc. As a result of said investigations it was revealed that the corporation’s taxable income for 1978 was $12,104.00, instead of the $46,950.96 represented, and that sales as of August 31,1979 were only $150,733.19, or a decline of 33%, instead of the projected $400,000 annual represented. Additionally, it was learned that it would be impossible for the Small Business Administration to release its chattel mortgage on the inventory and equipment of the lumber yard by the planned date. As a result of this newly acquired knowledge, counsel for plaintiff contacted the seller, declaring the contract to be null and void, assigning as reasons the excessive indebtedness of the operation, the non-completion of the inventory, and the inoperative condition of two trucks, in addition to the aforementioned misrepresentations. Plaintiff’s request for the return of his deposit was rejected. This suit against Miley and his corporation followed, wherein plaintiff sought recovery of the deposit and an additional $2,801.93 representing the value of lumber placed in inventory during the short period plaintiff operated the business pursuant to the interim operating agreement.
After trial on the merits, the trial judge rendered judgment in favor of the plaintiff, stating:
“After careful consideration of the testimony of all the witnesses and review of the documentation, the Court accepts the testimony of the plaintiff in this case as being truthful, honest, straightforward and be-lieveable (sic).
It is the ruling of the Court that had the true financial picture and business experience of the defendant business been revealed to the plaintiff he would not have attempted to purchase the defendant business.”
We will not disturb reasonable evaluations of credibility and inferences of fact absent manifest error. Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Canter v. Koehring, 283 So.2d 716 (La.1973); Boustany v. Fluid Dynamics, Inc., 392 So.2d 750 (La.App. 3rd Cir. 1980); Johnson v. Coca Cola Bottling Co., Inc., 386 So.2d 993 (La.App. 3rd Cir. 1980). In the present case we find no manifest error. Indeed the evidence fully supports the trial court’s findings of material misrepresentations and that Mr. Hensley would not have entered into this agreement had he received the correct financial information. The result reached is in total accord with our law and jurisprudence. LSA-Civ.Code Art. 2547; Buxton v. McKendrick, 223 La. 62, 64 So.2d 844 (La.1953); Tauzin v. Sam Broussard, Inc., 283 So.2d 266 (La.App. 3rd Cir. 1973).
For the reasons assigned the judgment of the trial court is affirmed. All costs taxed to appellant.
AFFIRMED.

. The other defendant was Campti Lumber Yard, Inc., a corporation which was wholly owned by Miley.