407 So.2d 1381 (1981)
Alex FENETZ, Plaintiff-Appellee,
v.
Edward J. STINE, et al., Defendant-Appellant.
No. 8529.
Court of Appeal of Louisiana, Third Circuit.
December 22, 1981.
*1382 Camp, Carmouche, Palmer, Palmer, Barsh & Hunter, A. J. Gray, III, Lake Charles, for defendant-appellant.
Franklin, Moore & Walsh, Ray Dawson, Baton Rouge, for defendant-appellee-appellant.
McHale, Bufkin & Dees, Michael Dees, Lake Charles, for plaintiff-appellee.
John Digiulio, Baton Rouge, for defendant-appellee.
Before DOMENGEAUX, GUIDRY and DOUCET, JJ.
DOUCET, Judge.
This law suit involves contracts for the irrigation of approximately 355.7 acres of riceland in Calcasieu Parish. Plaintiff, Alex Fenetz, alleges he sustained crop losses as the result of defendant Edward J. Stine's breach of contract to provide adequate water for irrigation of his rice crop on land known as the Sulphur Farm. In response to plaintiff's suit, defendant Stine denied the existence of any such contract, breach thereof, or resultant damages; reconvened against plaintiff for a percentage of the rice crop for a sum of money, and for recognition of a lien on plaintiff's rice crop; and further third-partied his lessor, State of Louisiana, Department of Public Works, owner of the canal system involved, alleging their construction on that portion of the Sabine River Diversion System prevented him from furnishing sufficient water. The Department of Public Works denied liability *1383 to Stine, and third-partied the diversion canal contractors, Darling and Ryder, Inc.[1] and Goss Construction Company, together with their bonding company, Safeco Insurance Company of America. Trial followed and subsequently judgment was rendered in favor of plaintiff and against the defendant Stine in the amount of $39,196.29; in favor of third-party plaintiff, Stine, and against the Department of Public Works in the amount of one-half (½) of all sums owed; and in favor of third-party plaintiff, Department of Public Works, and against said construction companies and their surety in the amount of one-half (½) of all sums owed. We affirm.

FACTS
Before 1975 the Sulphur Farm was owned and irrigated by Krause & Managan Lumber Co., Ltd. By 1975, substantial changes were made in the agricultural management of the area of which the Sulphur Farm is part. The canal system had been acquired by the state as part of the Sabine River Diversion System, and construction on the system was undertaken by a joint venture composed of Goss Construction Company and Darling and Ryder, Inc. By instrument dated February 24, 1974 defendant Stine leased portions of the old Krause & Managan canal system from the Department of Public Works. The Sulphur Farm was farmed by plaintiff in 1975 and is bounded on the west by what is referred to as the "main canal", and on the south by an east-west canal known as "Canal 3-B". The property is traversed by a lateral canal called the Miller lateral. All portions of the farmland were irrigated by one of these three canals, and 85 acres east of the Miller lateral required irrigation only from Canal 3-B. In preparation for the 1975 farming operations, defendant Stine caused the Miller lateral to be dredged and prepared for irrigation purposes. In 1975 Canal 3-B was blocked by several dams and was not available for irrigation. Plaintiff originally claimed Stine was obligated to furnish water to the aforementioned 85 acres serviced by Canal 3-B, but he has not appealed from an adverse ruling at the trial level in this regard. As to the remaining portion of the Sulphur Farm, the trial judge agreed with the plaintiff that Stine had breached his obligation to furnish adequate water, and crop loss was the result.
On appeal defendant Stine specifies as error that the trial court committed manifest error in finding: 1) a contract; 2) a breach; 3) the occurrence or extent of damages; and 4) that the State is not totally responsible for plaintiff's damages. Defendant Department of Public Works claims fault lies with the contractors who failed to follow plans and specifications, and further claims that a hold harmless clause in its agreement with the construction companies protects the Department from liability. Safeco Insurance asserts all defenses made by the contractors and additionally claims any nonperformance or breach on their part is outside of the bond coverage provided.

I.
We find the record amply supports the trial judge's finding that there was a contract between Fenetz and Stine and that it was breached. Although the defendant originally admitted the existence of a contract, he later denied same in a supplementary and amended answer. The evidence supports his original answer. For many years the defendant had furnished water to area farmers and the record indicates he assured plaintiff that he would provide water as he had done in the past. The agreement was not reduced to writing, but such is not necessary, in fact, a contract may be implied by one's actions. LSA-C.C. Art. 1811. Defendant's partial assistance in providing water supports the trial court's finding that an agreement existed. LSA-C.C. Art. 1816. Furthermore, defendant requested and accepted 1/5 of plaintiff's crop as "water rent".

*1384 II.
The trial judge found that defendant was obligated to furnish water at the customary time of the crop year, April 1, however, without the consent of the plaintiff, defendant agreed with the Department of Public Works to extend the said date. Larry Galien, an expert agronomist, testified that water at such critical stages of the rice crop is essential for a crop to realize its maximum yield. Not until April 29, 1975, did plaintiff receive water. Shortly thereafter, the main canal developed a wash-out preventing further furnishing of water. Also, flood gates were placed at an elevation too high to flood the fields unless the main canal was completely filled, which was not done. Finally, there was no evidence of a fortuitous event such as drought.

III.
The trial judge explained his quantum award, as follows:
"According to the testimony of Mr. Larry Galien, an expert rice farmer consultant, the expected yield from the farm was 30 green barrels of rice per acre, or a total of 10,671 barrels on 355.7 acres. Therefore, the gross green barrel loss to plaintiff was 4,849.77 barrels. Substracting [sic] 1/5th for water rent and 1/5th for land rent, the net green barrel loss to Fenetz was 2,909.87 barrels. Deducting 10% for drying, the plaintiff's net dry loss was 2,618.88 barrels. Expressing this quantity in hundred weight, we find that plaintiff had a loss of 4,242.59 hundred weight. Mr. Fenetz sold his rice for $8.93 per hundred weight, therefore his gross dollar loss was $37,886.33.
In argument, plaintiff states that charges for drying, handling, storage, fumigation and insurance amount to $1.36 per green barrel. The Court finds this essentially correct. Therefore, a further deduction should be made amounting to $3,957.42. Also, in and out charges of $565.68 should be deducted. Also, gasoline cost for transportation should be deducted and plaintiff argues this charge should be $33.60. The Court finds that this charge is not in error. Applying these deductions to plaintiff's loss, the net loss from the first crop is $33,329.63.
The evidence showed that a stubble crop would have been produced and would have produced an additional 5.5 green barrels per acre or 1,956.53 (355.7 acres × 5.5 barrels) additional barrels. Applying all rents and other deductions, plaintiff's stubble crop loss was $17,928.16, or a total of $51,257.79 for the entire crop. However, there was no obligation to furnish plaintiff water to the east 85 acres, therefore plaintiff is not entitled to recover a loss on this acreage. Apportioning the loss, the Court finds that the loss attributabe (sic) to the west 272 acres (272/355.7 × $51,257.79) was $39,196.29."
Defendant Stine complains of the use of expert testimony, however, the trial court has broad discretion in selecting a method of calculating damages to crops, Jardell v. Sabine Irrigation Co., Inc., 346 So.2d 1365 (La.App. 3rd Cir. 1977). We find no abuse of discretion in the method employed to calculate damages. Likewise, we will not disturb the award by the trial court as the record reveals no clear abuse of discretion. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977); Reck v. Stevens, 373 So.2d 498 (La.1979); Mid-State Homes Inc. v. Lartigue, 383 So.2d 99 (La.App. 3rd Cir. 1980).

IV.
The trial judge further found that the Department of Public Works contributed to the plaintiff's damages in improperly installing a siphon system at the wash-out site. We will not disturb such factual findings absent manifest error. Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Canter v. Koehring, 283 So.2d 716 (La.1973); Boustany v. Fluid Dynamics, Inc., 392 So.2d 750 (La.App. 3rd Cir. 1980); Johnson v. Coca-Cola Bottling Co., Inc., 386 So.2d 993 (La.App. 3rd Cir. 1980). Applying *1385 this standard of review to the facts in the record, we conclude the trial judge was not clearly wrong in his apportionment of liability. Furthermore, the hold harmless clause alluded to by the Department is ambiguous and was thus properly construed against them.
Similarly, the trial judge's finding that the contractors failed to follow the plans specified, will not be disturbed. The contention of the construction companies' surety, Safeco, that what is not required by statute in a public works contract must be read out of the bond, is without merit. See: Construction Materials, Inc., v. American Fidelity Fire Insurance Co., 388 So.2d 365 (La.1980); Bullard v. State of Louisiana, 394 So.2d 626 (La.App. 1st Cir. 1980).
For the reasons assigned, the judgment of the trial court is affirmed and costs of this appeal are taxed to appellants.
AFFIRMED.
NOTES
[1] The action was stayed as to this defendant because of voluntary bankruptcy proceedings.