EDWARDS, Judge.
Plaintiff, Russell Leger, brought this action for workmen’s compensation benefits against his former employer, Cargill, Inc. Plaintiff’s petition alleged that he suffered an injury to his left wrist in January of 1980, during the course of his employment by Cargill, Inc. This injury was alleged to have occurred when an air hose on a drill which plaintiff was using came loose and struck him.
The trial court rendered judgment for defendant, dismissing plaintiff’s suit. The trial court concluded that plaintiff failed to prove his case by a preponderance of the evidence since he failed to prove that he had suffered an injury while on the job. Furthermore, assuming, arguendo, that plaintiff had proved such an injury, the trial court held that he failed to prove any disability resulting therefrom.
Plaintiff has appealed the district court’s judgment. We affirm.
The trial court made two distinct factual findings — that plaintiff failed to prove that he was injured on the job and that he failed to prove that he suffered any disability. The trial judge’s written reasons for judgment, attached hereto as an appendix, reveal that these factual conclusions are the result of evaluations of witness credibility and inferences of fact. Such factual findings are not to be disturbed on appeal in the absence of manifest error. Cadiere v. West Gibson Products Company, Inc., 364 So.2d 998 (La.1978); Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Canter v. Koehring Company, 283 So.2d 716 (La.1973). A thorough review of the evidence in the record reveals no such error.
For the foregoing reasons, the judgment of the district court is affirmed. All costs of these proceedings are to be paid by plaintiff-appellant.
AFFIRMED.
SHORTESS, J., dissents and will assign reasons.
APPENDIX
RUSSELL LEGER 16TH JUDICIAL
VERSUS DISTRICT COURT
NO. 61437 PARISH OF ST. MARY
CARGILL, INC. STATE OF LOUISIANA
REASONS FOR JUDGMENT
The threshhold issue in this workman’s compensation case is: Did this nineteen year old plaintiff suffer an accident in the course and scope of his employment which caused his injury?
In January, 1980, plaintiff worked for Cargill in its salt mine as a miner. His testimony concerning the occurrence is in some instances corroborated and in other instances directly contradicted by other witnesses and other evidence. His testimony is substantially as follows:
Sometime in January (he does not recall the day or the date), while using a drill, the air hose which operates the drill came off striking him and causing the drill to twist, all of which resulted in pain and swelling in his left wrist. This was witnessed by his co-workers Oppenheimer and Thompson. When the accident occurred he complained to Oppenheimer. He completed his shift and at the close of his shift reported the accident to his immediate superior, Murphy Olivier, who made a written report of the accident. He missed four or five days work at the time of the accident but did not consult a physician until approximately a week to a week and a half after the accident. He consulted Dr. Dugas, a general practitioner, and related to him how the accident occurred. Plaintiff continued to work until some time in April even though for a part of the time he had a cast on his arm. He was able to do the work because he had help in the form of his co-workers who were specifically assigned by Murphy Olivier to assist him with the more difficult tasks. He quit in April because he was accused of misconduct. Had he not been so accused he would have continued to work for defendant doing the same job. His rate of pay was $6.58 per hour. His average work week was forty-eight hours and his *985 gross pay was $315.84 per week. Plaintiff never previously injured his left wrist although he did injure several fingers on his left hand rather seriously both before and after the incident in question in this litigation. He has continued to have pain in his left wrist which prevents heavy manual labor. Since leaving Cargill, he has worked part-time for his step-father as a tractor driver on his father’s farm but has not done any regular work of any nature since November of 1980 when he severely injured a finger on his left hand while working for his step-father. His duties at the mine included the operating of heavy equipment, lifting and carrying explosives weighing sixty to seventy pounds, working with equipment involving heavy vibrations and the shoveling of salt.
As indicated, the following evidence from other sources in some instances corroborates and in other instances directly contradicts plaintiff’s testimony:
He saw Dr. Dugas on February 4, 1980, and related to Dr. Dugas that he had hurt his wrist on January 25 at 11:30 PM while using the drill.
The employer’s work records (defendant’s exhibit 4) show that plaintiff missed no work in January and only one day in February. He missed considerable time in March and in April and his employment was terminated in mid April.
Plaintiff’s step-father testified that the plaintiff told him of the accident the day after it happened but he could not recall exactly when that was.
Murphy Olivier, plaintiff’s foreman, made out a “foreman’s report of injury” on January 8, 1980, showing the name of the injured person to be Russell Leger and that he hurt his wrist while picking up a case of blasting powder. The report shows that there were no witnesses to the accident. He got his information from plaintiff who came to him and related what had happened. Plaintiff did not mention the drill or the air hose to him. He was plaintiff’s foreman the entire time of plaintiff’s employment and plaintiff’s work never changed. Plaintiff performed the same duties as before while he had a cast on his arm and after it was removed. No extra help was ever assigned to plaintiff and no one helped him. Olivier remains employed by Cargill.
Alton Oppenheimer, who also remains employed by Cargill, worked with plaintiff during his entire tenure. He never witnessed plaintiff have any accident of any kind. He did see plaintiff working with a cast at one point and when he inquired about it plaintiff simply advised him that he had broken a small bone in his wrist. Plaintiff did not say how it had occurred. With the cast on plaintiff worked exactly as he had worked before doing the same work in the same fashion. Plaintiff had no more help after the incident than before. He was positively never present at any time when an air hose disengaged from a drill while being used by plaintiff or anyone else.
Clay Thompson was a co-worker no longer employed by Cargill. He failed to respond to his subpoena to appear at the time of trial and by agreement of counsel his testimony was taken by deposition. Plaintiff’s counsel objected to cross-examination by defendant’s counsel by use of a previous statement made by the witness to an investigator employed by plaintiff’s counsel on the ground that the statement taken by the investigator was protected from discovery as an attorney’s work product. The objection is overruled. The statement is simply a statement by a witness. It contains neither impressions nor opinions of the attorney and is therefore not an attorney’s work product. La.-C.C.P. 1424; see Cargill, Inc. v. Cementation Company of America, 377 So.2d 1334 ([La.App.] 1st Cir. 1979), reversed at 379 So.2d 254 apparently on other grounds.
Clay Thompson testified that he did in fact witness the accident. It was sometime in January but he could not remember the day nor the date nor the hour. He testified that the drill twisted and the hose came off and that plaintiff’s wrist was swollen. He positively stated that Mr. Oppenheimer was working with them, witnessed the accident, and turned off the machine. Thompson *986 was firm that the accident was reported to Murphy Olivier in his presence on the same day; that plaintiff told Olivier what happened (the drill twisted and the hose came off); that he saw Olivier fill out the foreman’s report of injury; saw what he wrote; and that he put down the names of witnesses. Plaintiff did in fact continue to work but following the accident he helped plaintiff with his work so that the heaviest parts did not have to be born by plaintiff alone. The accident, he thinks, occurred in the day time and plaintiff missed three days of work immediately after the accident and returned with a cast on his arm. His excuse for not responding to the subpoena issued by this Court was that he had just undertaken a new job and did not want to miss work. He has prior theft convictions and made some statements in his recorded statement to plaintiff’s investigator which were inconsistent with the testimony which he gave at the time of his deposition.
Does the foregoing evidence constitute compliance by plaintiff with the burden placed upon his by the workman’s compensation laws as interpreted by the Courts of Appeal to prove his case by a preponderance of the evidence? The Court is convinced it does not. Aside from the testimony of Clay Thompson (whose credibility is highly questionable) the only other hard evidence that supports plaintiff is the “for-man’s report of injury” and even that shows a totally different occurrence than plaintiff describes. While a more relaxed standard of proof may apply in workman’s compensation cases, the Court is not convinced that even that standard has been met.
Even if, for argument sake, it be assumed plaintiff has proven an injury by accident on the job he has failed to prove disability.
Plaintiff has a fracture of the left capral navicular bone which was diagnosed by Dr. Dugas on his first visit on February 4,1980. It continues in an unhealed condition which is not uncommon for this injury. Plaintiff is right handed. The question whether this fracture impairs plaintiff’s capacity to do heavy work such as he did at the time of his accident must be answered in the negative.
Plaintiff continued to work until mid April when he terminated his employment because he was accused of misconduct. It is interesting to note that it was not because of a physical disability. Plaintiff testified that Dr. Dugas, his treating physician, said he could continue to work and for that reason he worked both with and without his cast. Plaintiff states he could do his same job only because he had help from his co-workers. The testimony of Clay Thompson supports him. That of Alton Oppenheimer and Murphy Olivier is to the contrary.
The testimony of Dr. Dugas is not helpful as to the medical aspects of plaintiff’s ability to return to work.
Dr. Morein, an orthopedic surgeon to whom plaintiff was referred by his attorney, saw plaintiff twice, concluded that he would have disabling pain in attempts to do heavy manual labor on a regular basis. He assigned a twenty percent impairment to plaintiff’s wrist.
Dr. Webre, an orthopedist to whom plaintiff was referred by defendant, saw plaintiff once and concluded that he had full function of his wrist but assigned a twenty-five percent impairment to the wrist due to pain. However, Dr. Webre did not feel that plaintiff suffered severe incapacitating pain.
After his release by Cargill plaintiff worked on his step-father’s farm largely as a tractor driver until November of 1980. According to plaintiff, his father-in-law, and one Rivers Breaux, plaintiff could do that without pain but did complain and his wrist did occasionally swell when he had other heavy types of work to do. Plaintiff stopped doing that work in November when he cut the index finger of his left hand quite severely and he has worked only infrequently since. It is apparently the injury to his finger which caused him to terminate regular employment by his step-father and not any disability resulting from the wrist fracture. Plaintiff has made no effort to find any other type of employment.
*987 It is in the context of this evidence that the Court is called upon to determine whether or not this plaintiff suffers substantial disabling pain when he undertakes to do heavy work. It is the Court’s opinion that plaintiff’s actions speak more truth than his words. While he contends that he cannot work due to pain he has in fact worked. He continued to do his same work for Cargill for months following his accident. The evidence does not support his contentions that he did it only with extra help. The only witness who supports him in this regard is not particularly credible. The medical opinion appears to be equally divided concerning the nature of his pain. While the work of a tractor driver may be considered to be somewhat lighter than that which he was doing at the moment of this accident, it must be born in mind that at the time of this accident he did not spend the majority of his time working with a drill. His time was divided among numerous tasks many of which were not nearly so physically demanding as that particular one.
While plaintiff may suffer occasional pain and swelling of his wrist upon doing work similar to that which he was generally engaged in while employed by Cargill, I cannot find that this pain would be frequent enough or substantial enough to constitute a disability. The fact that he did his job at Cargill and testified that he only stopped doing his job because he was accused of misconduct that but for that he would have continued to do his job indefinitely, coupled with the fact that he did work for his father-in-law and stopped that work only because he had a new injury, convinces the court that his pain is not so regular or so frequent or so severe as to be disabling. His pain will not necessarily increase with the passage of time as there is radiographic evidence of gradual healing.
For the foregoing reasons, judgment will be rendered herein in favor of defendant and against plaintiff dismissing plaintiff’s demands at plaintiff’s cost. Formal judgment will be signed upon presentation.
New Iberia, Louisiana, May 4th, 1981.
/s/ John M. Duke. Jr.
JUDGE