WILLIAMS, Judge.
Defendant appeals a trial court judgment awarding plaintiff forty-seven weeks of workers’ compensation benefits at $163.00 per. week for a facial disfigurement, arguing that the disfigurement was self-inflicted.
On August 12, 1981, plaintiff, Johnny Thompson, was struck in the eye with a rope while in the employ of defendant, Gib-bens Pools, Inc. He received fifty-three weeks of compensation benefits at $163.00 per week, as well as medical benefits of $3,627.61. These payments ceased on August 18, 1982, and plaintiff brought this suit, alleging that he was permanently and totally disabled from returning to the same or similar type of employment and demanding continued compensation. The trial court granted plaintiff $163.00 compensation per week for forty-seven additional weeks, as the remaining balance of the one hundred weeks compensation allowed under La.R.S. 23:1221(4)(p) when the employee is “seriously and permanently disfigured.” Explaining his holding at the trial’s end, the trial judge stated:
After listening to the evidence and testimony of the parties the Court is impressed with only that part of the background of Mr. Thompson to show that he was industrious, that he did work at all times, that he worked for five years, I believe, in McCombe, and he worked for approximately seven months steady at the place of employment of the defendant, Gibbens Pools, Inc. That he was injured in the eye. I don’t think there’s any conflict as far as that is concerned. Dr. Pardue has testified that he is capable of inflicting on himself injury, and it may be that he is capable of anything but I didn’t see, and nor did Dr. Pardue *173 testify that there was anything in the record to show he did inflict the injury on himself. In fact Dr. Pardue did not see the injury itself, but only testified as to his psychiatric disorder. What you (indicating Mr. McEachin) called factitious. And the Court believes the testimony of the brother Jessie Thompson who says he saw his brother Johnny Thompson with the injury and that somebody had given him some salve to put on it, and the salve evidently was used to try to heal it if it was possible, and it shows that even during the time it was attempted to be healed but it didn’t heal, and he has on his face now a scar that is no doubt totally permanent and I believe that everybody will admit it’s a total and permanent scar that he has, and under the jurisprudence I find that the total and permanent portion of the scar is a continuation of the initial injury, and he will be entitled to workman’s compensation ...
[[Image here]]
The Court will award him the balance of forty-seven weeks at $163.00 a week.
Defendant asserts the trial court erred in awarding judgment to plaintiff, and in refusing to grant defendant’s motion for a new trial, in light of the law and evidence adduced at trial showing the injuries to be self-inflicted. If plaintiff did in fact wilfully seek to prolong his compensation benefits by repeatedly injuring or prolonging the injury to his eye, as defendant asserts he did, resulting in the permanent facial scar, plaintiff would be precluded from additional compensation pursuant to R.S. 23:1081 which provides that “No compensation shall be allowed for an injury caused: (1) by the employee’s wilful intention to injure himself_”
Examination of defendant’s exhibits uncovered substantial evidence to support a diagnosis of self-inflicted injury. In a letter of February 22, 1982, Dr. Sanford Pallet, who saw plaintiff several times in October and November of 1981, told defendant’s insurer, “I am unable to give a prognosis as requested because we felt that the continuing abrasions were of a self-inflicted nature.”
Dr. Kenneth Haik saw plaintiff several times in November and December of 1981, and January of 1982. On the day of plaintiff’s final visit, Dr. Haik wrote a letter to Dr. Caldwell referring plaintiff to him for consultation, explaining, “[i]t is very difficult to tell whether there is really anything going on with this man or not. There is some question of a self-inflicted injury, particularly since this man has been on Workmen’s Compensation and out of work for a long period of time.”
Dr. Caldwell saw plaintiff from February through June of 1982. In a letter of February 25, 1983, he reported to defendant’s insurer:
After he failed to respond to appropriate medication, it was almost immediately suspected that he was self-inflicting injury.... Certainly on both occassions [sic] when we patched the eye to prevent him from instilling or traumatizing the eye in any manner, the eye promptly healed. This was done on two ocassions [sic] so that it would remove any doubt as to the possibility of him self-inflicting the injury. It is also my opinion that the lesion which developed on his nose while the eye was patched was a result of him trying to dig at the patch and then possibly injecting or putting some chemical on the skin which caused the tremendous ulceration and produced the scar. I do not feel that either of these complications was a result of the original injury. Had Mr. Thompson not specifically inflicted the injury to himself, he would have had no residual problems from his original injury.
In a deposition taken in March, 1983, Dr. Caldwell who could not be present at trial, noted that bacteria cultured from the lesion on plaintiff’s nose was that normally found in feces. He testified that there was “no question in my mind that everything that has happened to him since the original injury has probably been self-inflicted.”
*174 Dr. Price, who saw plaintiff in February, March, and April of 1982, wrote in his last progress notes that plaintiffs condition “may well be self-induced with [illegible] on skin abraded under loose areas of patch. Discussed with patient this possibility.”
Plaintiff was admitted to the Tulane Medical Center on July 20, 1982; his admission record contained the diagnosis “probably self-inflicted injury.” During his 8 day stay, plaintiff was examined by Dr. James Pardue, a psychiatrist. Dr. Pardue reported in his findings that plaintiff had been consulting an attorney regarding a possible settlement for his eye injury. He also wrote, “Patient denies any knowledge of why the eye may be slow to heal. Feels he will be fired if he is cleared to return to work because several days ago he was told to turn in his uniforms.” Dr. Pardue recommended that it be explained to plaintiff that his current eye problems were not work related and were unlikely to result in further compensation benefits; that plaintiff be prevented physical access to the affected eye; and that he undergo vocational rehabilitation or other counseling to facilitate a return to employment.
Only plaintiffs first physician, Dr. Rodney Kalil, stated in a letter of reply to defendant’s insurer that he had not considered plaintiffs injury to be self-inflicted. Dr. Kalil had treated plaintiff over a thirteen day period beginning only six days after the rope injury.
Four witnesses testified at trial. In addition to his own testimony, plaintiff presented that of his brother, Jessie Thompson and his friend, James Alexander, both of whom lived with plaintiff. Defendant presented the expert testimony of Dr. James Pardue, a psychiatrist.
Plaintiffs witnesses all testified that plaintiff had always been steadily employed. Plaintiffs testimony that he had never purposefully rubbed or abused his eye in order to prolong his injury was corroborated by his brother and Alexander, who testified they never saw plaintiff engage in such behavior. Plaintiff testified that the lesion around his eye occurred when, while he was hospitalized at Tulane, the flesh around his eye patch came off with his bandages when his dressings were removed by a nurse. Since that incident, plaintiff testified, the area on the side of his nose near the injured eye “stays sore all the time.” Plaintiff’s other witnesses also testified to the lesion suffered by plaintiff and the great pain and discomfort it caused plaintiff.
Dr. Pardue conducted a 35-45 minute personal psychiatric evaluation of plaintiff. He testified that he did not examine plaintiff’s eye, but relied only on the hospital records he was given, stressing that he was “not there to assess his eye, just his psychiatric status.” Dr. Pardue noted that plaintiff’s condition “was not following a usual course of events for the eye;” that plaintiff indicated he had been in trouble with the law at some point in the past; that plaintiff was concerned over loss of income and anxious about difficulty with his present job; and that plaintiff had consulted an attorney and had expressed concern that his attorney had not pursued a settlement for plaintiff’s eye problems vigorously enough. It was Dr. Pardue’s opinion that “[t]hese things pulled together would indicate to me that probably the most reasonable explanation that was going on was that he was engaging in some voluntary base to try to continue his eye and essentially to obtain financial satisfaction. I couldn’t rule out the factitious disorder.”
The trial judge was impressed by the testimony of plaintiff’s witnesses. Evidently he gave less weight to Dr. Pardue’s testimony, considering it speculative, and the hospital records, deposition, and other written exhibits introduced by defendant.
The Louisiana Supreme Court has held:
... on appeal, the Court of Appeal must give great weight to the factual conclusions reached by the trial court; and ‘when there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court’s finding, *175 on review the appellate court should not disturb this factual finding in the absence of manifest error.’ Canter v. Koehring Co., 283 So.2d 716, 724 (La. 1973). The reviewing court must give great weight to the conclusions of the trier of fact, and should not disturb reasonable evaluations of credibility and reasonable inferences of fact, even though other evaluations and inferences are as reasonable.”
Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977), at 263-4. Although evaluations and inferences in this case might as reasonably have led a trial court to hold that plaintiffs injuries were self-inflicted to prolong his workers’ compensation benefits, we cannot hold that the trial court was manifestly erroneous in reaching a conclusion to the contrary.
For the foregoing reasons, the decision of the trial court is AFFIRMED.
AFFIRMED.