482 So.2d 962 (1986)
Wilbert HENRY, Plaintiff-Appellant,
v.
STATE of Louisiana, DEPARTMENT OF HEALTH AND HUMAN RESOURCES, Defendant-Appellee.
No. 84-984.
Court of Appeal of Louisiana, Third Circuit.
February 5, 1986.
*963 Edward, Stefanski & Barousse, James M. Cunningham, III, Crowley, for plaintiff-appellant.
Broadhurst, Brook, Mangham, Hardy & Reed, William Hudson, III, Lafayette, for defendant-appellee.
Before DOMENGEAUX, LABORDE and KING, JJ.
LABORDE, Judge.
Wilbert Henry, plaintiff, appeals the judgment of the trial court individually and as administrator of the estate of his minor child, Caril Henry. The trial court held that plaintiff failed to show by a preponderance of the evidence that the State of Louisiana, through the Department of Health and Human Resources (DHHR), caused Caril Henry's personal injury. Plaintiff urges on appeal that the trial court erred in holding that plaintiff had failed to carry his burden of proof. After exhaustive review of the record, we find no manifest error in the decision and affirm the judgment accordingly.
On April 6, 1982, Caril Henry was a student attending Southwest Louisiana State School (SLSS), Iota, Louisiana.[1] Caril has been diagnosed as a quadriplegic and as a spastic cerebral palsy patient with profound mental and physical limitations. His condition is believed to have come about as a result of meningitis contracted when he was six months old. SLSS provides a program of special care and treatment for citizens with mental and physical handicaps.
Although SLSS has a live-in program for its students, Caril's parents opted to continue personally caring for the child. Caril was sent to SLSS's day school. On April 26, 1982, as part of Mrs. Henry's routine, Caril was prepared for school. Mrs. Henry testified that she bathed, fed, and strapped Caril in a wheelchair, all without incident. Caril was also administered his morning dosage of phenobarbital, a barbiturate prescribed to lessen Caril's muscle spasms. When the school bus came, Caril was wheeled out of the house and into the bus via a ramp.
*964 The bus driver, Mr. John Alden Cart, testified that he immobilized and secured Caril's wheelchair, then transported Caril to school without incident. Mr. Cart noted that Caril was in his usual pleasant mood, and averred that Caril was not injured on the bus that morning.
After morning assembly, Caril was wheeled to his classroom by one of the school attendants. Two instructors in Caril's orthopedic class, Ms. Judith Leger and Ms. Edna Granger, testified that Caril was crying and fussy upon entering the class. Caril, weighing only 32 pounds, was removed from his wheelchair and positioned on a pad. Caril's discomfort became obvious as the crying continued. One of the employees, Ms. Leger, in an attempt to pacify Caril, knelt beside the child, lifted him onto a table, and examined him. Ms. Leger heard a "popping" sound as she lifted Caril.
Ms. Leger, after her examination revealed nothing unusual, immediately brought Caril to the school nurse who was also unable to discover Caril's problem. Upon the recommendation of Dr. McManos, Nurse Dauphin and Ms. Leger took Caril to the American Legion Hospital in Crowley, Louisiana.
At the hospital, Caril was examined by a surgeon, Dr. Charles Matirne, who, after viewing Caril's x-ray, diagnosed Caril's injury as a spiral oblique fracture of the right femur. At this point, plaintiff decided to let the family physician, Dr. Murray Brown, attend to the fracture. The fracture was treated and Caril was hospitalized for three weeks. The bone healed normally and Caril recovered completely.
Plaintiff attempted to establish at trial that one of the employees of SLSS negligently broke Caril's leg. Plaintiff tried to show by direct and circumstantial evidence that Ms. Leger stepped or knelt on Caril's leg, immediately breaking it. Plaintiff relies on a statement made to Mr. and Mrs. Henry at the American Legion Hospital by Ms. Leger. The statement allegedly was to the effect that Ms. Leger did not know how Caril's leg could have been broken unless she had knelt on it.
Ms. Leger testified that after reflecting on the incident, she has become convinced that she did not kneel on Caril's leg. This conviction is supported by Ms. Granger's testimony that she observed Ms. Leger pick up Caril without injuring the child. Ms. Granger was just two feet away from Ms. Leger and witnessed Caril's elevation to the table.
The medical testimony did not establish that Caril's leg was broken by someone stepping or kneeling on it. Dr. Matirne opined that a spiral oblique fracture is usually caused by force plus a twisting motion. Dr. Bordelon testified that had someone stepped on Caril's leg, the fracture would almost certainly have been of a different type. None of the medical testimony even slightly suggests that the fracture was caused by someone kneeling on Caril's leg.
Plaintiff also asserts that the trial court improperly considered testimony relating to a subsequent fracture of Caril's right femur. Plaintiff timely objected to the evidence as irrelevant. The evidence was relevant to show another reasonable hypothesis as to how the fracture could have occurred on April 6, 1982. Although Caril's femur had completely healed, the same leg was refractured in May of 1983. The evidence established that Caril was fastened to his wheelchair at home when he became excited and pushed his leg to a point where it became caught by the chair. Caril twisted the already bound limb and caused the same type of fracture that he had suffered a year earlier. Caril was apparently using the same wheelchair at the time of both accidents.
Plaintiff also asserts that the trial judge improperly discounted the testimony of the bus driver, Mr. Cart, who testified that Caril was quiet on the bus the morning of April 6, 1982. In his reasons for judgment, the trial judge noted that the bus driver may have "slanted his testimony away from any admission that Caril was fussing that morning" because the bus *965 driver was a potential defendant. It is well established that the review of the demeanor and motives of a witness are integrally intertwined among the fact finder's duties in assessing the credibility of each witness. The trial judge's assessment of credibility is reasonable and will not be disturbed on review. See Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977).
The trial judge also considered the fact that Caril had just received his dosage of phenobarbital shortly before boarding the bus. The drug reduced Caril's muscle spasms, but it also acted to sedate him and to decrease his sensitivity to pain. Even if Mr. Cart's testimony had been accepted as accurate, the phenobarbital could have masked Caril's pain and accounted for Caril's placid appearance on the bus.
The general rule is that negligence is not presumed, and the burden of proving negligence by a preponderance of the evidence rests on the party alleging it. The proof of negligence may be by direct or circumstantial evidence; however, a party relying on circumstantial evidence has borne his burden of proof only if the evidence taken as a whole shows that the defendant's fault was the most plausible cause of Caril's injury. The probability of Caril's injury having been caused by the defendant's fault must preponderate over the probability of causation from any other factor. See Romero v. Butcher Air Conditioning Company, 255 So.2d 132 (La. App.3d Cir.1971).
We conclude that plaintiff has failed to prove by a preponderance of the evidence that SLSS's negligence caused Caril to break his leg. The mere fact that an accident occurred does not necessarily infer that someone was negligent. See Broussard v. Pennsylvania Millers Mutual Insurance Company, 406 So.2d 574 (La. 1981); Barcia v. Estate of Keil, 413 So.2d 241 (La.App. 4th Cir.1982). Proof of negligence is a question of fact to be determined by the judge or jury. While appellate courts maintain jurisdiction over factual determinations, trial court decisions are only to be altered in light of manifest error. Buxton v. McKendrick, 223 La. 62, 64 So.2d 844 (1953). We are sympathetic to the injuries suffered by Caril and the hardships placed on him and his family, but we find no manifest error in the trial court's factual conclusions. We are constrained to affirm.
For the above and foregoing reasons, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] SLSS is operated under the auspices of DHHR.