CHIASSON, Judge.
The decision of this court in Hankel v. Hartford, No. 12,016, June 12, 1978 (an unpublished opinion) was remanded to us by the Louisiana Supreme Court on October 20, 1978, No. 63,101, 363 So.2d 1188 (La.1978) for reconsideration in light of Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La.1978).
In Ardoin, supra, the Supreme Court held that “a medical specialist is required by La.Civil Code Articles 2315 and 2316, and La.R.S. 9:2794, to exercise the degree of care and possess the degree of knowledge or skill ordinarily exercised and possessed by physicians within his medical specialty.”
Under this new holding a medical specialist’s duty is governed by the professional standards of the medical specialty and not by the professional standard within a locality or community.
The facts in the instant case point out that Dr. Roger P. Blitz is a licensed physician in the State of Louisiana, is certified by the American Board of Orthopedic Surgeons, and has since 1970 practiced his medical specialty of orthopedic surgery. Therefore, under the Ardoin test, Dr. Blitz is required to exercise the degree of care and possess the degree of knowledge or skill ordinarily exercised and possessed by other orthopedic surgeons.
*1033 Dr. Blitz performed a laminectomy and a discectomy on the plaintiff-appellant, Mr. Michel J. Hankel, on May 20, 1975. Three orthopedic surgeons testified, Dr. Roger P. Blitz, the surgeon who performed the operation; Dr. Daniel S. Sinclair, an associate of Dr. Blitz; and Dr. E. J. Dabez-ies, the plaintiff’s current physician. All three testified that the procedure for this type of surgery requires at one point three hands. One hand would hold a nerve root retractor, one hand would hold a sucker (to remove blood), and one hand would hold an instrument for removing a disc or lamina.
Although the trial judge referred to this standard as the one prevailing in the community for this type of operation, the facts reveal that this standard is the one for the medical specialty of orthopedic surgery. Therefore, we find that this “three-handed procedure” is the standard of care, skill and procedure exercised and possessed by physicians in the medical specialty of orthopedic surgery. Additionally, we note that the testimony reveals the neurologists also perform laminectomies and discectomies and that Dr. Earl Hackett, a neurologist, also testified that this was the standard of care for this type of surgery.
The dispute revolves around Dr. Blitz’s adherence to the standard. Plaintiff contends that Dr. Blitz did not use “three hands” but only two and was thereby negligent in performing the surgery. Plaintiff has the burden of proving that the physician either lacked the requisite degree of knowledge or skill or he failed to use reasonable care and diligence, along with his best judgment in the application of that skill and that, as a proximate result of the lack of knowledge or skill or the failure to exercise this degree of care, plaintiff suffered injuries that would not otherwise have been incurred.
The record concerning Dr. Blitz’s adherence to the proper standard of care revolves around the testimony of two witnesses, one witness’s testimony was available to the trial court only in deposition form.
Dr. Blitz in his deposition and at trial stated that a third hand held the nerve root retractor. Dr. Blitz testified that because of the rules of the hospital where he performed the operation, a medical doctor was required to assist him in this surgery. Dr. Jacob H. Kety was the assisting doctor. Dr. Blitz testified in his deposition and at trial that Dr. Kety held the nerve root retractor. Dr. Kety in deposition stated he was not asked to hold the nerve root retractor, and he didn’t recall Dr. Blitz asking him to hold the nerve root retractor.
Four other persons were present during the operation in question, the anesthesiologist, two circulating nurses and an operating room technician. None of the parties to this litigation deposed any of these people nor subpoenaed them for trial. These witnesses were equally available to all parties to this litigation. Plaintiff asks us to attach a presumption against Dr. Blitz that because these four people did not testify they would have testified adversely to Dr. Blitz. First, no foundation was presented by the plaintiff that any of these persons, present in the operating room during surgery, would know the manner in which the surgery was performed. Secondly, as stated before, these witnesses were equally available to all parties to this litigation. We, therefore, do not attach any presumption to Dr. Blitz relating to the failure of these people to testify.
Additionally, we also feel bound by the recent decision of the Louisiana Supreme Court in Cadiere v. West Gibson Products Company, Inc. et al., 364 So.2d 998, 1978, in which it was held:
“The reviewing court must give great weight to the factual conclusions arrived at by the trier of fact, and reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed even though the appellate court may feel that its own evaluations and inferences are as reasonable. Aleman v. Lionel F. Favret Co., Inc., 349 So.2d 262 (La.1977); Canter v. Koehring Co., 283 So.2d 716 (La.1973). ‘The reason for this well-settled principle of review is based not only upon the trial court’s better capacity to *1034 evaluate live witnesses (as compared with the appellate court’s access only to a cold record), but also upon the proper allocation of trial and appellate functions between the respective courts.’ Canter v. Koehring Co., supra at 724.”
The trial court found that the evidence supported the conclusion that Dr. Blitz performed this operation in a manner in keeping with the standard of care, skill, and procedure generally followed by orthopedic surgeons. Although the trial court used the application of a “locality rule” to determine the standard of care, it is the same as the standard for an orthopedic surgeon and comports with the recent Supreme Court decision in Ardoin, supra. Additionally, although plaintiff contends that the trial court did not consider Dr. Dabezies’ testimony as to the standard of care, we find Dr. Dabezies’ testimony confirms the testimony of the other orthopedic surgeons as to the standard of care to be exercised by that medical specialty in performing similar operations.
Justice Dixon concurring in the remand stated: “[T]he Court of Appeal might wish to dispose of the contended issue, if serious, that the injury was caused in part by the failure to extend the surgical procedures to another interspace.” The hospital records show that a laminectomy (removal of lamina) was to be done at the fourth and fifth lumbar of the spine and at the fifth lumbar and first sacral vertebra [we will refer to these sections of the spine as L4-L5 and L5-S1]. The hospital records also showed that a discectomy (removal of a disc) was to be done at the L5-S1 level. Plaintiff argued that Dr. Blitz never got to the disc at the L5-S1 level, but in fact removed a disc at the L4-L5 level. Plaintiff’s argument, as we understand it, was that Dr. Blitz was working at the L4-L5 level, when bleeding became a problem; that Dr. Blitz finished the surgery and closed the wound without ever going to the L5-S1 level.
We believe the following facts pertinent to this issue: The myelogram showed a positive finding of herniated disc substance at the L5-S1 position. Dr. Sinclair in his deposition stated that in his preoperative examination of Mr. Hankel, he found tenderness at the L5-S1 level, but not at the L4-L5 level. The hospital records reveal that Dr. Blitz had anticipated removing a disc at the L5-S1 level, but during surgery, he did not remove a disc at this level but rather at L4-L5. Dr. Blitz testified that since the myelogram had indicated a probable protrusion at the L5-S1 area, that is where he anticipated removing a disc, and where he made his first investigation. However, he testified he was not impressed with the findings in that area, and that there was no pathology present, and moved up one level on the spine to L4-L5, which is the proper procedure. He stated he had retracted the nerve root at L5-S1 and then at L4-L5, and at L4-L5 he found bulging disc material which he removed. Dr. Earl Hackett, a neurologist and appellant’s expert witness, testified that there was nerve root damage at both L4-L5 and L5-S1. Dr. Dabezies, an orthopedic surgeon and appellant’s current treating physician, testified that an excision was made of the L4-L5 disc; that he saw no definite evidence of any bone removed at L5-S1 and no definite evidence of a lamina defect at L5-S1; that it was hard to determine by X-ray whether or not the L5-S1 level had been entered.
We find from the testimony that Dr. Blitz did enter and examine the L5-S1 and L4-L5 interspaces. We have read the hospital records relating to the surgical procedure and believe it reflects what surgery Dr. Blitz intended to perform and what surgery he in fact performed. We find that the discrepancy between the two to be clarified by Dr. Blitz’s explanation. We find this to be an exercise of the proper degree of care, skill, and knowledge to be exercised by an orthopedic surgeon.
We do not view the Supreme Court’s writ as mandating that we change the views expressed in our opinion of June 12,1978 on the other issues presented.
For these reasons, the judgment of the trial court is affirmed, at appellant’s cost.
AFFIRMED.