GASKINS, J.
|!This case concerns ownership of funds in accounts at Regions Bank which were opened in the name of the Caddo Parish Coroner’s Office. The executrix of the succession of the late coroner Dr. George M. McCormick, II, claims that the funds in these accounts were the personal property of Dr. McCormick. She appeals from a judgment directing that the funds be delivered by the bank to Dr. Mairus[1] T. McFarland, Dr. McCormick’s successor, in his capacity as coroner for Caddo Parish. We affirm the trial court judgment.
*496 FACTS
Dr. McCormick served as the coroner of Caddo Parish from 1982 until his death on September 20, 2005. At some point, he opened five accounts at Regions Bank, each in the name of the “Caddo Parish Coroners [sic] Office.” On September 30, 2005, Dr. McFarland was appointed interim coroner by the Caddo Parish Commission until a special election could be held to replace Dr. McCormick. Dr. McFarland began to issue checks on one or more of the accounts which the bank honored. On November 8, 2005, the bank was notified by persons claiming to represent Dr. McCormick’s unopened succession that the funds were owned by the estate.
On November 10, 2005, the bank filed a concursus proceeding to determine ownership of the funds. Named as defendants were the Parish of Caddo (“the Parish”); the City of Shreveport (“the City”); Dr. McFarland, the duly acting coroner of Caddo Parish; and Dr. McCormick’s unopened | ^succession. In its petition, the bank alleged that the sources of the funds in the accounts were the appropriations from the Parish and the City pursuant to La. R.S. 33:1556.1, and that the City and the Parish contended that they are parties needed for just adjudication of the issues. In the event that the succession was found to be the owner, the bank requested judgment against Dr. McFarland for the sums paid from the accounts at his direction.
In their respective answers, the City, the Parish and Dr. McFarland asserted that the funds in dispute were paid to the Caddo Parish Coroner’s Office pursuant to La. R.S. 33:1556.1 and that the use of the funds for any purpose other than those set forth in the statute would be a prohibited donation of public funds.
In her answer, Susan McCormick, Dr. McCormick’s widow and the executrix of his succession, claimed that the funds were the proprietary funds owned by the estate and that Dr. McCormick was entitled to the “emoluments of the office” as coroner.
Mrs. McCormick filed exceptions of no cause of action and no right of action against the City and the Parish. The exceptions were denied by judgment signed in October 2006.
A bench trial was held in March 2007. The following witnesses testified: Henry Dodd, Dr. McCormick’s personal CPA who also served as the accountant for the coroner’s office during Dr. McCormick’s tenure; Grover Austin, a CPA who had been the first assistant legislative auditor for the State of Louisiana; and Erica Bryant, the director of finance and human resources for the Caddo Parish Commission. The deposition of Marcia Kay | a Gilbert, who formerly served as administrative assistant and later administrator for the Caddo Parish Coroner’s Office, was admitted into evidence. A stipulation as to the testimony of Tom Dark, chief administrative officer for the City, was also admitted.
According to the stipulation, if called to testify, Mr. Dark would say that the City funded the coroner’s office through appropriations issued in 12 monthly installments based upon an amount identified by the coroner’s office as the amount necessary to operate the office of the coroner. He also would testify that the City paid a percentage of that amount pursuant to an agreement with the Parish, which funded the remaining percentage.
Mr. Dodd testified that because the annual audits of the coroner’s office utilized an accounting methodology known as proprietary fund accounting, the funds were the personal funds of Dr. McCormick. However, he admitted on cross-examination that the proprietary fund accounting method does not determine ownership of the funds. He also admitted that he was *497 unaware of the accounts at Regions Bank being used for anything other than the operation of the coroner’s office.
Mr. Austin testified that the use of the proprietary fund accounting method did not confer ownership of public funds to an elected official. ■ He testified that this method of accounting is used by governmental entities that provide goods and services to private entities or other governmental entities. In providing those goods and services, the governmental entities wish to measure revenues as compared to expenditures to ensure that they are fully recovering their costs of the services provided, including the depreciation of |4cost of capital. According to Mr. Austin, any retained or net earnings reflected in an annual audit indicated funds belonging to the coroner’s office as a public entity which were to be used for future expenses.
Ms. Bryant and Ms. Gilbert testified about the coroner’s office annual budget process. Ms. Gilbert also testified about the operation of the coroner’s office. According to her, the purpose of the bank accounts was to run the coroner’s office; Dr. McCormick received a salary from the funds. To her knowledge, he did not make any withdrawals from the accounts for his own personal use. At the request of the trial judge, the litigants filed into the record evidence as to the amount of salary Dr. McCormick received.
The trial court issued a written opinion in which it ruled against Dr. McCormick’s succession. The trial court described the testimony of Mr. Dodd — who opined that the funds were Dr. McCormick’s personal property as an emolument of office — as confusing, difficult to follow, and unsupported by all the other' evidence. The court found Mr. Austin’s testimony to be more logical. The trial court held that the uncontradicted and overwhelming evidence showed that the sources of almost all funds received by the coroner’s office were annual appropriations made by the City and the Parish from their general funds. The appropriations were made pursuant to annual budget requests by Dr. McCormick. These requests included money for salaries for the coroner, deputy coroner and investigators, as well as for the administrator, assistants and clerical personnel. Funding was provided by the City and the Parish pursuant to La. |sR.S. 33:1556.1; however, not all funds requested were actually spent, resulting in a surplus.
In light of Ms. Gilbert’s testimony that the coroner’s office was not a fees for services office, the trial court rejected the succession’s argument that the coroner’s office should be considered a “fee based” or a salary plus fee based office in which all money somehow belonged to the coroner. The court also stated that the succession’s “emoluments of office” argument defied logic and common sense when dealing with an elected official. It found that any excess funds remain with the governmental entity for future use. The court also noted the financial benefits Dr. McCormick received — in addition to his salary— as a result of an agreement between the City, the Parish, and Forensic Pathologists, Inc.[2]
By judgment signed in April 2007y the trial court directed that the money in the accounts, which totaled $308,934.59, be delivered by Regions Bank to Dr. McFarland in his capacity as coroner for Caddo Parish. Costs were assessed against the succession.
The succession appealed.
*498 STANDING
The succession complains that the City and the Parish should not have been allowed to participate in this suit because they had no ownership claims on the funds in the Regions Bank accounts.
A concursus proceeding is one in which two or more persons having competing or conflicting claims to money, property, or mortgages or | ^privileges on property are impleaded and required to assert their respective claims contradictorily against all other parties to the proceeding. La. C.C.P. art. 4651. The purpose of a concursus action is to avoid multiplicity of suits, by providing for a single judgment which will finally adjudicate all the issues between all the parties. Hibernia National Bank v. Orleans Regional Hospital, L.L.C., 28,982 (La.App. 2d Cir.11/1/96), 682 So.2d 1291, writ denied, 97-0026 (La.2/21/97), 688 So.2d 513; Rehabilitation Concepts Plus, Inc. v. Wills, 42,400 (La.App. 2d Cir.10/10/07), 968 So.2d 262.
In the event of a ruling granting the succession ownership of the funds in the Regions Bank accounts — which contained funds appropriated by the City and the Parish for the “necessary or unavoidable expenses” of operating the coroner’s office — the City and the Parish could have been called upon to provide additional funding to allow the coroner’s office to continue to operate. This would have undoubtedly led to further litigation. Thus, these parties had an interest in this suit to determine ownership of the funds in the Regions Bank accounts.
The trial court correctly found that the City and the Parish had standing to participate in this concursus suit.[3]
| OWNERSHIP OF FUNDS
The succession claims that the trial court erred in not holding that the disputed funds were the personal property of Dr. McCormick. We disagree with the succession’s argument for essentially the same reasons set forth in the trial court’s excellent and well-reasoned written opinion.
The office of coroner is provided for in the Louisiana Constitution. La. Const, art. 5, § 29 (stating that “[i]n each parish a coroner shall be elected for a term of four years”). Coroners are members of the judicial branch of government, and although their jurisdiction is limited to the parish in which they hold office, coroners are state officials who perform state functions. Mullins v. State, 387 So.2d 1151 (La.1980); Carriere v. St. Landry Parish Police Jury, 1997-1914 (La.3/4/98), 707 So.2d 979.
The audits indicate that a small portion of the funds for running the coroner’s office were derived from such things as fees charged for emergency commitments or copies of autopsy reports. The overwhelming majority of the funds were provided by the City and the Parish pursuant to La. R.S. 33:1556.1. This statute provides:
Notwithstanding any provision of this Part to the contrary, all necessary or unavoidable expenses, including supplies, incident to the operation and functioning of the Caddo Parish coroner’s *499 office, in accordance with a budget approved by the city and the parish governing authorities, shall be paid by the governing authorities of the parish of Caddo and the city of Shreveport when such expenses are certified by the coroner as being necessary, or unavoidable. For the purposes of this Section, the parish of Caddo and the city of Shreveport shall each pay their portion of the necessary or unavoidable expenses for the coroner’s services on the basis of the percentage of all coroner’s services performed on behalf of the parish of Caddo and the city of Shreveport, respectively.
| ^According to the evidence presented at trial, coroners are compensated in three different manners: a salary, a salary plus fees, or fees alone.[4] Mr. Dodd initially testified that Dr. McCormick was paid under a fees basis; he later stated that Dr. McCormick also paid himself a salary as an employee of the coroner’s office. On the other hand, Ms. Gilbert, who was involved in budget preparations from 1990 to 2005, testified that none of the coroner’s budgets were prepared with respect to a fees for services concept. She also testified that Dr. McCormick received a salary as his compensation. An appellate court may not set aside a trial court’s finding of fact in the absence of manifest error or unless the' finding is clearly wrong. Stobart v. State through Department of Transportation and Development, 617 So.2d 880 (La.1993). Reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Stobart, supra. The trial court resolved any questions pertaining to witness credibility against Mr. Dodd and in favor of Ms. Gilbert. On this record, such a finding was reasonable and supported by the evidence. We find no manifest error in the trial court’s conclusion that the Cad-do Parish Coroner’s Office was not run on a fees for services basis.
The budgets submitted to the City and the Parish by the coroner included provisions for salaries; one line item included salaries for “Coroner, Deputy Coroners, Investigators.” Additional evidence submitted 1 sat the request of the trial court showed the specific amounts of the coroner’s individual salary from 1994 to 2005. According to Mr. Dodd’s testimony, Dr. McCormick reported this salary on his personal tax returns every year. Although Mr. Dodd opined that Dr. McCormick owned the retained earnings carried over in the coroner’s budget at the end of the year, he also testified that Dr. McCormick never paid taxes on this money.[5]
According to the witnesses, the funds in the accounts were either generated by the coroner’s office, such as fees for copies of autopsy reports, or were appropriations from the City and the Parish made pursuant to annual budget requests submitted by the coroner. The coroner certified that all listed expenses were “necessary or unavoidable.” Once obtained from the City and the Parish, the funds were used exclusively for the operation of the coroner’s office. While there was testimony that Dr. McCormick believed that he personally *500 owned the funds, no one testified that he had ever withdrawn money from any of ■these accounts for his personal use.
The succession argues that any money left over at the end of a budgetary year belonged to the coroner personally because there was no “reversionary provision” in the funding arrangement entitling the funding authorities to refunds of overpay-ments, as is the case with the Parish’s funding for the First Judicial District Court. However, in Carriere v. St. Landry Parish Police Jury, 707 So.2d at 986, the Louisiana Supreme Court stated when discussing a coroner’s budget:
|inAt the end of the year, any surplus amounts will be returned to the Police Jury or may be used as a credit in funding the next year’s budget request.
The evidence presented in the instant case indicates that the latter occurred, i.e., the funds remaining at the end of a year were simply put toward funding the next year’s operation of the coroner’s office.
The succession also contends that if the coroner’s office ran out of money before the end of the year, Dr. McCormick was personally liable for the expenses associated with fulfilling his duties as coroner. However, the record does not demonstrate that Dr. McCormick ever made a deposit of his own personal funds into any of the Regions Bank accounts under such circumstances. According to Ms. Gilbert, when there was a deficit, they simply cut back on expenses or Dr. McCormick would delay receipt of his own monthly paycheck to improve cash flow.
In Black’s Law Dictionary (8th ed.2004), “emolument” is defined as “[a]ny advantage, profit, or gain received as a result of one’s employment or one’s holding of office.” As to the “emoluments” of office argument advanced by the succession, we are unaware of any law which would allow a public official, like Dr. McCormick, to claim personal ownership of funds appropriated for the operation of the public official’s office. None of the witnesses — including Mr. Dodd — were aware of any other coroner attempting to claim personal ownership of such funds and take the retained earnings with him when he left office. The records demonstrates that Dr. McCormick was compensated with a salary for his position as coroner; he l^also received separate payment for autopsies performed through his personal lab, Forensics Pathologists.
The succession also complains about the trial court’s refusal to apply an “uncalled witness” adverse presumption to the failure of the other parties to call Radford Snelding to testify. Mr. Snelding, a former City employee, was present for part of the trial but was never called to testify. Mr. Dodd testified that he had discussions with Mr. Snelding about the retained earnings being the coroner’s personal property and that Mr. Snelding disagreed with him. When the matter was discussed on the record during the.trial, counsel for the Parish stated that Mr. Snelding was not called because everything he was going to testify to had been adequately covered by the testimony of other witnesses. As the .trial court noted in its opinion, Mr. Dodd acknowledged that Mr. Snelding disagreed with him. An adverse presumption exists when a party having control of a favorable witness fails to call him or her to testify, even though the presumption is rebuttable and is tempered by the fact that a party need only put on enough evidence to prove the case. Easter v. Direct Insurance Company, 42,178 (La.App. 2d Cir.5/9/07), 957 So.2d 323. The record reveals that ample evidence had already been presented to support the position of the City, the Parish and Dr. McFarland. As a result, no presumption was warranted.
*501 Finally, the succession makes certain allegations in its brief of biased and unprofessional conduct by the trial court. We have carefully reviewed the record, and we have found no evidence supporting any of these assertions. To the contrary, the record demonstrates that the trial judge 112behaved courteously and fairly to all parties, treating them all in an evenhanded manner. Although the succession refers to an “unexplained signing of two separate judgments” as evidence of some sort of bias by the trial judge, we observe that the appellate record contains a full explanation of the trial court’s accidental signing of a courtesy copy of the judgment and the subsequent signing of the original judgment.[6] Additionally, the trial court filed a per curiam to ensure that this court was completely advised of the circumstances surrounding the signing of the judgments.
Based on the foregoing, we affirm the trial court judgment directing that the funds in the Regions Bank accounts be delivered to Dr. McFarland in his capacity as coroner of Caddo Parish.
CONCLUSION
The judgment of the trial court is affirmed. Costs of this appeal are assessed against Susan McCormick in her capacity as executrix of the estate of George M. McCormick, II, M.D.
AFFIRMED.
STEWART, J., concurs with -written reasons.

. We note that Mairus is incorrectly spelled as “Marius” in some pleadings.

. Forensic Pathologists, Inc., was a private laboratory owned by Dr. McCormick which performed autopsies; it billed the City and the Parish directly for its services.

. In the portion of its brief addressing the issue of standing, the succession also contends that there is no such legal entity as "the coroner's office.” However, we note that the legislature apparently disagrees with this assertion. The provisions of La. R.S. 33:1573 state that, under certain circumstances, ownership of real property purchased by a coroner for the performance of his duties "shall be vested in the name of the office of the coroner.” Additionally, La. R.S. 33:1573.1 allows the coroner of St. Tammany Parish to hold immovable property “in the name of the coroner's office.”

. The Louisiana Supreme Court set forth these three methods of compensation for coroners in Carriere v. St. Landry Parish Police Jury, supra. In its opinion, the court relied in part upon La. R.S. 33:1559, which was repealed in 2003. However, we note that since the repeal of that statute, the legislature has not made any change in the law to reflect implementation of a different compensation scheme for coroners.

. In contrast, as to Dr. McCormick’s private lab, Mr. Dodd testified that Dr. McCormick did pay taxes on the retained earnings carried over at the end of the year for Forensics Pathologists, Inc.

. The succession complained to the trial court about the signing of the two judgments. A letter dated May 23, 2007, from the trial judge to all counsel was filed in the record, explaining the situation. On April 16, 2007, the trial court signed a courtesy copy of a judgment submitted by counsel for Dr. McFarland. The court was then advised that counsel for the succession had an objection to the form of the judgment. A telephone conference with the attorneys was held on April 19, 2007; since counsel for the succession was on a trip, another lawyer in his firm participated in the telephone conference. The court determined that the form of the judgment already signed was correct. However, it was discovered that the judgment signed previously was only a courtesy copy, and the Caddo Clerk of Court’s office requires that the original judgment filed with its office be signed. Consequently, the judge signed the original judgement on April 19, 2007.