Judgment rendered March 3, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,747-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MARIAN CLINTON, ET AL                     Plaintiffs-Appellants

versus

EDWARD JONES, ET AL                        Defendants-Appellees

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 20184044

Honorable Bernard Scott Leehy, Judge

* * * * *

PARKER ALEXANDER, LLC                 Counsel for Appellants,
By: Kevin David Alexander              Marian Clinton and
    Chad Curtis Carter                 Haley Clinton

PHELPS DUNBAR, LLP                    Counsel for Appellees,
By: Thomas Kent Ledyard Morrison       Ace American Insurance
    Taylor M. Bologna                  Company, Martin
                                       Marietta Services Inc.,
                                       and Edward L. Jones

* * * * *

Before PITMAN, BLEICH *(Pro Tempore)*, and BODDIE *(Ad Hoc)*, JJ.

**BODDIE** *(Ad Hoc)*, **J.**

Marian Clinton and Haley Clinton appeal a judgment dismissing their personal injury claims following a trial on the merits because they failed to carry their burden of proving the defendants' negligence. Concluding that the trial court correctly rejected the application of the doctrines of *res ipsa loquitur* and negligence *per se* to the facts of this case, we affirm the judgment.

## FACTS

Early in the afternoon on April 2, 2018, Edward Jones was driving a cement truck owned by his employer, Martin Marietta Materials, eastbound on I-20 in West Monroe, Louisiana, when a chute fell from his truck and landed in the outside lane of travel. There is no dispute that Jones was acting in the course and scope of his employment when this occurred.

At the same time, Marian Clinton was driving her Chevrolet Captiva vehicle in the outside eastbound lane on I-20 in West Monroe. Her daughter Haley Clinton was her passenger. Marian was driving 60 mph and was three car lengths behind the vehicle in front of her when that vehicle abruptly changed lanes. Suddenly confronted with the chute in her lane of travel, Marian was unable to change lanes because of a vehicle in the inside lane and a vehicle on the outside shoulder. Her vehicle struck the chute and sustained damages.

Marian pulled her vehicle to the shoulder in front of Jones's cement truck. She saw a man exit the truck, retrieve the chute from the roadway, place the chute on the truck, and leave. As the truck drove past, she heard a passenger in the truck yell something to her but she did not know exactly what was said.

Jones was later cited by the investigating police officer for violating La. R.S. 14:100 (hit-and-run driving) and La. R.S. 32:383 (care required for loads on vehicles). According to the officer's report, Jones stated: (i) he had not been driving that truck for very long; (ii) he was driving slowly over the ruts on I-20; (iii) he felt the cement chute fall from its place; (iv) he stopped on the shoulder to retrieve the chute, which he was able to do after the vehicle struck it; and (v) he fled the scene without contacting the police or exchanging any information. The officer reported that nobody at the accident scene complained of any injuries.

Marian and Haley (the "Clintons") filed suit against Jones, Martin Marietta Materials, and Ace American Insurance Company (Martin Marietta and Ace are collectively referred to as "MMM"). The Clintons alleged they sustained soft tissue injuries when their vehicle struck the chute.

In its answer to the petition, MMM raised as defenses that the damages were caused solely by the fault or negligence of the Clintons or others for whom MMM has no responsibility, the Clintons' damages should be reduced as a result of their own fault, and the Clintons failed to mitigate damages. A curator was appointed to represent Jones due to the inability to properly serve him.

A bench trial was held on December 5, 2019. The only witnesses to testify at the trial were the Clintons. Their medical records and depositions from their treating chiropractors were filed into evidence at trial. The Clintons and MMM also introduced the police report into evidence at trial.

The trial court found in favor of MMM and dismissed all of the Clintons' claims against them. In its reasons for judgment, the trial court

specifically rejected the application of the doctrines of *res ipsa loquitur* and negligence *per se* to the facts of this case. The Clintons have appealed.

**Res ipsa loquitur**

The Clintons argue on appeal that the trial court erred in not applying the doctrine of *res ipsa loquitur* in this matter. They maintain that the trial court made unreasonable factual conclusions when it considered the road condition of I-20 as a plausible cause of the accident.

As explained by the Louisiana Supreme Court in *Linnear v. CenterPoint Energy Entex/Reliant Energy*, 06-3030, p.12 (La. 9/5/07), 966 So. 2d 36, 45:

> *Res ipsa loquitur* is a rule of circumstantial evidence which allows an inference of negligence on the part of the defendant if the facts indicate the defendant's negligence, more probably than not, caused the injury. It applies in cases involving circumstantial evidence, rather than direct evidence, provided the plaintiff establishes the following foundation of facts: (1) the injury is of the kind which does not ordinarily occur in the absence of negligence; (2) the evidence sufficiently eliminates other possible causes of the injury, such as the plaintiff's own responsibility or the responsibility of others; and (3) the alleged negligence of the defendant must fall within the scope of his duty to the plaintiff, which will often be the case if the defendant had exclusive control of the thing or situation that caused the injury to the plaintiff.

As a qualification of the general rule that negligence is not to be presumed, *res ipsa loquitur* must be sparingly applied. *Spott v. Otis Elevator Co.*, 601 So. 2d 1355 (La. 1992).

The trial court determined that two primary possibilities, operator error and highway defect, were equally plausible causes for the chute becoming dislodged. The trial court noted that the parties had equal access to the facts relating to the road condition, yet the Clintons offered no proof that highway defects were less likely than operator negligence to have

3

caused the chute to dislodge. The trial court reasoned that because two or more equally plausible causes existed for the chute falling from Jones's truck, application of the doctrine of *res ipsa loquitur* was inappropriate and no inference of negligence existed.

The trial court was not clearly wrong in finding that the evidence presented at trial did not sufficiently eliminate other possible causes of the accident. Neither Marian nor Haley had any knowledge as to why the chute dislodged from the truck. They did not testify regarding what a Martin Marietta employee did or failed to do which led to the chute falling from the truck. Jones told the investigating officer that he had been driving slowly over the ruts in the roadway. The effect of the ruts on the cement truck's motion could be an explanation for why the chute fell from the truck. There was no expert testimony on behalf of the Clintons eliminating these ruts or another road condition as a possible cause for the chute coming to be on the roadway. Jones did not testify at trial. However, his statement to the police was part of the police report that the Clintons and MMM introduced into evidence.

In summary, the trial court properly rejected the application of the doctrine of *res ipsa loquitur* as the trial court's finding that a highway defect was an equally plausible cause of the accident was not manifestly erroneous.

***Negligence per se***

A violation of La. R.S. 32:383 is negligence *per se*. *Benoit v. State ex rel. Dept. of Transp. & Dev.*, 2001-912 (La. App. 3 Cir. 12/28/01), 805 So. 2d 428. The Clintons contend that the trial court erred when it failed to apply negligence *per se* to the facts of this case. They argue that the Louisiana Legislature's intent in enacting La. R.S. 32:383 was to protect

4

highway travelers from items falling from or becoming detached from vehicles that become a hazard to users of the highway. They further argue that Jones's violation of the statute was the cause-in-fact and legal cause of their damages. MMM counters that a plain reading of the statute shows that it applies to the contents being transported by and within the hold of a truck, not to a component part or appurtenance of the truck.

In rejecting the Clintons' argument that the doctrine of negligence *per se* applied because Jones had violated La. R.S. 32:383, the trial court determined that because the statute was clear and unambiguous and its application did not lead to absurd consequences, it was to be applied as written and no further interpretation was to be made in search of the legislature's intent. The trial court noted the disagreement between the parties over the meaning of the word "load." The trial court equated a "load" to "cargo" or "goods" before considering that the chute was neither cargo nor goods but was a device used to assist in the discharge of cargo or goods. The trial court determined that the chute was no different from a lift attached to the rear of a cargo van that is used to assist in the unloading or discharge of a load of cargo or goods. The trial court believed that notwithstanding Jones's plea of guilt or no contest to La. R.S. 32:383, Jones did not violate that statute and negligence *per se* was inapplicable to the facts of this case.

Questions of law, such as the proper interpretation of a statute, are reviewed by this court under the *de novo* standard of review. *Louisiana Municipal Ass'n v. State*, 04-0227 (La. 1/19/05), 893 So. 2d 809; *Gannett River States Publ'g Corp. v. Monroe City School Bd.*, 44,231 (La. App. 2

5

Cir. 4/8/09), 8 So. 3d 833, *writ denied*, 09-1029 (La. 6/19/09), 10 So. 3d 745.

When interpreting statutes, we are guided by the rationale of the Louisiana Supreme Court in *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, pp. 13-14 (La. 7/1/08), 998 So. 2d 16, 27:

> The starting point in the interpretation of any statute is the language of the statute itself. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." However, "when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." Moreover, "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole."
>
> It is also well established that the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Thus, legislative language will be interpreted on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. It is equally well settled under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter.

Citations omitted.

La. R.S. 32:383, titled "Loads on vehicles; care required thereto; penalties; definition[,]" provides:

> A. (1) The load on a vehicle shall not drop, sift, leak, or otherwise escape therefrom, except that sand may be dropped on a highway to secure traction or a liquid substance may be dropped on a highway to clean or maintain such highway.
> (2) Any load of garbage, refuse, sludge, and other discarded material being transported by a commercial hauler shall be covered while being transported in such a manner as to prevent the load from spilling or dropping from the vehicle.
> (3) Any violation of Paragraph (2) of this Subsection for failure to cover any load of garbage, refuse, sludge, and other discarded material shall be punishable by a fine of not more

6

than five hundred dollars or by imprisonment for not more than six months, or both.

(4) The penalty provisions of Paragraph (3) of this Subsection shall not apply when the load was properly covered and subsequently became uncovered as the result of an accident or circumstances beyond the control of the operator of the vehicle.

B. (1) The load on any vehicle shall be securely fastened so as to prevent the covering or load from becoming loose, detached, or in any manner a hazard to other users of the highway.

(2) Freight containers, as defined in 49 CFR 171.8, used in both the waterborne transport of cargo and in the overland transport of cargo shall be properly secured so as to prevent the container from becoming loose, detached, or in any manner a hazard to other users of the highway.

(3) Any violation of Paragraph (2) of this Subsection shall be punishable by a fine of not more than five hundred dollars or by imprisonment for not more than six months, or both.

(4) The penalty provisions of R.S. 32:383(B)(3) shall not apply when the freight container was properly secured and subsequently became loose or detached as the result of an accident or circumstances beyond the control of the operator of the vehicle.

C. "Loose material" means dirt, sand, gravel, nails, or other material that is capable of blowing or spilling from a vehicle as a result of movement or exposure to air, wind currents, or weather, but shall not include agricultural products in their natural state or wood chips.

While loose materials are defined in La. R.S. 32:383(C), such materials are regulated in La. R.S. 32:383.1. There is no definition of "load" within the confines of La. R.S. 32:383 itself. However, our inquiry does not end there.

Chapter 1 of Title 32 is the Louisiana Highway Regulatory Act. La. R.S. 32:383 is included within Chapter 1, as well as within Part VI, which is titled, "Size, Weight, and Load of Vehicle[.]" The definitions section of Chapter 1 states that when used in the chapter, "'Load' means a weight or quantity of anything resting upon something else regarded as its support." La. R.S. 32:1(38).

Act 113 of 1977 made numerous modifications to the Louisiana

Highway Regulatory Act. As enacted by Act 113, La. R.S. 32:383 read:

> A. The load on a vehicle shall not drop, sift, leak, or otherwise
> escape therefrom, except that sand may be dropped on a
> highway to secure traction or a liquid substance may be
> dropped on a highway to clean or maintain such highway.
> B. The load on any vehicle shall be securely fastened so as to
> prevent the covering or load from becoming loose, detached, or
> in any manner a hazard to other users of the highway.

Paragraph (C) defining "loose material" was added by Act 257 of

1982. That definition remains nearly identical to the current version with the

exception of "nails" being added as a "loose material" by Act 302 of 2006.

Additional provisions were added to Paragraph (B) through Act 936 of 1985,

and to Paragraph (A) through Act 928 of 1990.

Referring to the definition of "load" found in some dictionaries, the

trial court compared a "load" to "cargo" or "goods." However, that is not

the definition provided in La. R.S. 32:1.[1] Nevertheless, we note that La.

R.S. 32:1 states: "When used in this Chapter, the following words and

phrases have the meanings ascribed to them in this Section, *unless the

context clearly indicates a different meaning*." Emphasis added.

In *Hartford Acc. & Indem. Co. v. Joe Dean Contractors, Inc.*, 584 So.

2d 1226 (La. App. 2 Cir. 1991), this court considered an attached chute to be

a part of a cement truck when interpreting an insurance policy. The owner

of the property where the cement was being delivered was injured while

assisting the driver of the cement truck in positioning the truck's chute. The

chute was described by this court as a "hinged, permanent attachment

designed to direct the flow of the material from the truck." *Id.*, 584 So. 2d at

---

[1] There is no reference to La. R.S. 32:1's definition of "load" in the trial court's
reasons for judgment or in the parties' briefs to this court.

8

1228. The driver's employer filed a third-party demand seeking coverage from its manufacturers' and contractors' liability insurer. That insurer filed a motion for summary judgment in which it denied coverage under an automobile exclusion which stated the policy did not apply to bodily injury or property damage arising out of the use, loading, or unloading of any automobile owned or operated by an insured. Concluding that the policy clearly excluded coverage, this court stated:

> The unfolding of the chute, permanently attached to the truck, constituted the first preparatory step in pouring the cement from the vehicle. And, adopting a commonsense approach, the act causing the injury comprised a part of the unloading process.

*Id.*, 584 So. 2d at 1229. This court added that even if it took the narrow view that only the actual handling of property fell within the policy's definition of loading or unloading, coverage was still excluded because it was clear the truck was in use at the time of injury.

Valuable guidance in this realm is further provided in *Martinelli v Travelers Prop. Cas. Ins. Co.*, 271 A.D. 2d 890, 706 N.Y.S. 2d 515 (2000), wherein the plaintiff was injured while raking cement delivered through a chute. The cement truck driver had connected two extensions to the chute which was attached to the truck. The plaintiff's claim for no-fault insurance benefits was denied by the defendant on the basis that his injuries did not arise out of the use or operation of the cement truck. Concluding that Martinelli's injuries arose out of the use or operation of the cement truck, the court stated:

> The purpose of the cement truck was to deliver cement and the chute attached to the truck was essential to the unloading of the cement. Accordingly, we conclude that the chute as a part of the vehicle was a proximate cause of plaintiff's injuries. We further note that the fact the driver attached extensions to the chute does not convert the chute into something other than a part of

9

the vehicle. There is nothing in the record to indicate that the extensions were anything other than normal equipment which accompanied the truck for use in unloading cement.

*Id.*, 271 A.D. 2d at 891.

It follows that judicial decisions of our sister states are advisory only and not binding. However, the courts of this state have recognized their persuasive authority, particularly where no case on point exists. Although Louisiana courts should not apply out of state court decisions mechanically, such decisions can serve as guideposts if they are found to be logically persuasive and well-reasoned, as long as they are consistent with the law of this state.

The trial court concluded that the chute was no different from a lift attached to the rear of a cargo van. Thus, it reasoned that Jones did not violate La. R.S. 32:383 and negligence *per se* was inapplicable to the facts of this case. The chute was intended to be used as a device to aid in the discharge of the load the truck was transporting. The trial court referred to the chute as being dislodged from its "cradle or place of stowage." However, the record does not indicate whether the chute was fastened to the truck or whether it stayed in place due to gravity. In any event, regardless of the manner in which the chute normally remained on the truck, it is only logical to conclude that it was part of the truck and not part of the "load" as that term is used in La. R.S. 32:383. This in no way minimizes the potential hazard that an unattached or poorly attached vehicle part poses to motorists. The Clintons' argument for the application of negligence *per se* was properly rejected by the trial court.

10

*Affirmative defenses*

The Clintons further argue on appeal that the defendants did not prove their affirmative defense of fault of others by a preponderance of the evidence; thus, the trial court erred in finding a strong possibility of the fault of others, namely roadway defects, as a cause of their damages.

When addressing the *res ipsa loquitur* issue, the trial court concluded there was a strong possibility that the chute became dislodged when Jones struck a defect in the road. The court also concluded there was a strong possibility that Jones, a different Martin Marietta employee, or a third party improperly and negligently placed the chute on the truck.

The trial court's finding that a highway defect was an equally plausible cause of the accident was not unsupported speculation. In his statement to the police, Jones specifically mentioned ruts in the road. Moreover, the purpose of an affirmative defense is to defend against liability established by a plaintiff, which the Clintons failed to do in the first place. The Clintons' argument is without merit.

*Adverse presumption rule*

The Clintons additionally argue on appeal that the trial court erred in failing to presume the unfavorable testimony of Jones. This is the adverse presumption rule.

Also referred to as the "uncalled witness" rule, this presumption applies when a party has the power to produce witnesses who would elucidate the transaction or occurrence and fails to call those witnesses. *Bartley v. Fondren*, 43,779 (La. App. 2 Cir. 12/3/08), 999 So. 2d 146; *JPS Equipment LLC v. Cooper*, 50,506 (La. App. 2 Cir. 2/24/16), 188 So. 3d 1106. The presumption is rebuttable, particularly when the witness is

equally available to the opposing party. *Easter v. Direct Ins. Co.*, 42,178 (La. App. 2 Cir. 5/9/07), 957 So. 2d 323; *JPS Equipment LLC*, *supra*. Whether to apply such an inference is fully within the discretion of the trial court. *Glasscock v. Bd. of Sup'rs of La. State Univ.*, 49,855 (La. App. 2 Cir. 8/19/15), 174 So. 3d 757, *writ denied*, 15-1628 (La. 10/30/15), 179 So. 3d 618; *JPS Equipment LLC*, *supra*.

Louisiana courts have limited the impact of the adverse presumption rule by noting that the court may consider this presumption as it would any other relevant evidence in the case. Any claim by the Clintons that the rule applies to MMM's failure to call Jones as a witness at trial is simply not supported by the law or facts.

In *Hemphill v. Strain*, 371 So. 2d 1179 (La. App. 1 Cir. 1979), *writ denied*, 373 So. 2d 510 (La. 1979), the appellants argued that the defendant's failure to call certain designated witnesses who were listed as such on the pre-trial order raised a presumption that their testimony would be unfavorable to defendants. The court noted that although such a presumption is available in Louisiana, the presumption does not apply when the witness is equally available to both parties, citing *Hankel v. Hartford Fire Ins. Co.*, 366 So. 2d 1031 (La. App. 1 Cir. 1978). Moreover, in *Regions Bank v. Parish of Caddo*, 42,920 (La. App. 2 Cir. 2/27/08); 978 So. 2d 494, *writ denied*, 08-0669 (La. 5/30/08), 983 So. 2d 897, the court ruled that the uncalled witness presumption would not apply where the witness's testimony would have been cumulative.

MMM argues that Jones was no longer an employee of Martin Marietta at the time of trial and it could not locate him despite diligent efforts to do so. MMM further argues that it intended to call Jones as a

12

witness, but declined to do so in order to avoid unnecessary and redundant costs once it learned that the Clintons' attorney had already taken steps to procure a trial subpoena.

The record reflects that on November 14, 2019, the attorney for the Clintons requested a trial subpoena for Jones. A joint pre-trial statement was filed a week later. Jones was listed as a will-call witness by MMM. He was listed as a may-call witness by the Clintons.

On November 21, 2019, MMM filed a motion to continue the trial that had been set for December 5 on the ground that Jones had not been served with his trial subpoena. MMM argued that Jones's testimony was critical for the defense of comparative negligence. The Clintons filed an opposition to the motion in which they argued that MMM never sought a trial subpoena of Jones before filing the motion, and that Jones's presence was not required because his negligence had already been established through negligence *per se* for violating La. R.S. 32:383. MMM waived its motion at trial.

We discern no abuse of discretion in this record when the trial court did not consider the adverse presumption rule. The Clintons were aware of the difficulty in securing Jones's presence at trial. They also objected to a continuance in order for his trial subpoena to be served. Notably, they argued in opposition to the continuance that Jones's presence was not required.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment in all respects. All costs of this appeal are assessed to the appellants.

**AFFIRMED**.

13